UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RUEDA and EDUARDO R. GUEVARA,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company, and DOES 1 through 10 inclusive,<br><br>Defendants. | No. 1:17-cv-00968-DAD-JLT<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES IN PART<br><br>(Doc. No. 57) |

This matter came before the court on May 7, 2019 for hearing on plaintiffs Maria Rueda and Eduardo Guevara's (collectively, "plaintiffs") motion for attorneys' fees, costs, and expenses. (Doc. No. 57.) Attorney Sepehr Daghighian appeared telephonically on behalf of plaintiffs, and attorney Lisa Tudzin appeared telephonically on behalf of defendant FCA UC LLC ("FCA"). The court has considered the parties' briefs and oral arguments and, for reasons set forth below, will grant plaintiffs' motion in part.

**BACKGROUND**

On March 28, 2017, plaintiffs commenced this action against FCA by filing suit in Tulare County Superior Court. (*See* Doc. No. 1-1 at 3.) Plaintiffs alleged that a new Fiat 500L that they purchased in 2014 was delivered to them with serious defects and nonconformities to warranty.

1

(*Id.* at 5.) The complaint asserted causes of action for breaches of express and implied warranties, in violation of the Song-Beverly Act, California Civil Code § 1790 *et seq.* (*Id.* at 6–8.) On June 20, 2017, FCA removed the action to this federal court. (Doc. No. 1.) Thereafter, a March 5, 2019 trial date was set. (Doc. No. 9.) On March 1, 2019, the parties informed the court that they had reached a settlement. (Doc. No. 53.) FCA offered plaintiffs $110,000.00 to settle the matter. (Doc. No. 57-2 at 81.) Plaintiffs accepted that offer. (*Id.* at 82.) The settlement also included a provision that FCA "agree[d] to pay attorneys' fees, costs and expenses either by motion or by agreement." (*Id.* at 81.)

Apparently unable to agree on the appropriate amount of attorney's fees to be paid to their counsel, on March 25, 2019, plaintiffs filed the pending motion for attorneys' fees, costs, and expenses. (Doc. No. 57.) On April 23, 2019, FCA filed its opposition to the pending motion, and on April 30, 2019, plaintiffs filed their reply thereto. (Doc. Nos. 59, 60.)

**LEGAL STANDARD**

Under California's Song-Beverly Act, "if [a] buyer prevails in an action . . ., the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code. § 1794(d). "The plain wording of the statute requires the trial court to base the fee award upon actual time expended on the case, as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged." *Robertson v. Fleetwood Travel Trailers of CA, Inc.*, 144 Cal. App. 4th 785, 817 (2006).

> It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of showing that the fees incurred were

2

> allowable, were reasonably necessary to the conduct of the litigation,
> and were reasonable in amount.

*Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal quotation marks omitted); *see also Goglin v. BMW of North America, LLC*, 4 Cal. App. 5th 462, 470 (2016). Under a contingent fee arrangement, "a prevailing buyer represented by counsel is entitled to an award of reasonable attorney fees for time reasonably expended by his or her attorney." *Nightingale,* 31 Cal. App. 4th at 105 n.6.

"The determination of what constitutes a reasonable fee generally begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000)). The court will apply the lodestar method to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors America, Inc.*, 30 Cal. App. 5th 24, 35 (2018). Moreover, because "[the California] Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)." *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001); *see also Warren*, 30 Cal. App. at 35–36.).

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

\* \* \*

> As we [have] explained . . .: " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.' "

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th 550, 564 (2008)). Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive. *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *see also First American Title Ins. Co v. Spanish Inn, Inc.*, 239 Cal. App. 4th 598, 606 (2015) ("Although defendants *argued* to the trial court that the 'amount claimed for attorneys fees is not reasonable,' defendants did not respond to First American's evidence with evidence of their own, as required."); *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable.").

With this guidance in mind, the court turns to consider plaintiffs' pending motion.[1]

## ANALYSIS

Plaintiffs, as the auto buyers who prevailed in this suit, are entitled to reasonably incurred attorneys' fees, costs, and expenses. *See* Cal. Civ. Code § 1794(d). Here, plaintiffs seek: (1) an award of attorneys' fees in the amount of $58,177.50; (2) a lodestar multiplier of 0.5, in the amount of $29,088.75; and (3) an award of actual costs and expenses incurred in the amount of $12,135.93. (Doc. No. 57-1 at 7.) Plaintiffs seek a total award of $99,402.18. (*Id.*) FCA contends that the lodestar requested by plaintiffs is unreasonable and that an upward multiplier is not warranted in this case. (Doc. No. 59.) FCA also objects to various costs and expenses for which plaintiffs seek reimbursement. (*Id.*)

/////

/////

---

[1] Each party objects to evidence presented by the other in support of or in opposition to the pending motion. The court has read and considered these boilerplate evidentiary objections and, to the extent that the court considers any such objected-to evidence, those objections are overruled.

4

**A.     Attorneys' Fees Request**

Plaintiffs were represented by two law firms in this matter:  the Knight Law Group ("Knight Law"), which commenced this action on plaintiffs' behalf and provided legal services leading up to trial, and Hackler Daghighian Martino & Novak, P.C. ("HDMN"), which associated into this action to provide services relating to and in anticipation of the trial of this action.  (Doc. No. 57-1 at 9–10.)  Knight Law billed a total of $37,360.000 and HDMN billed a total of $20,817.50.  (*Id.* at 13)

     1.     <u>Number of Hours to be Awarded</u>

The billing records indicate that Knight Law attorneys expended 94.4 billable hours on this action and that HDMN attorneys expended 70.75 billable hours on this action.  (Doc. Nos. 57-2 at 22; 57-3 at 9–12.)  A total of nine Knight Law attorneys and a total of four HDMN attorneys billed in this matter.  (Doc. Nos. 57-2 at 22; 57-3 at 9–12.)

FCA contends that the number of hours billed by both law firms are unreasonable.  First, FCA argues that it served plaintiffs with a $95,000 Rule 68 offer on March 13, 2018 and that plaintiffs, instead of responding to that offer with a meaningful counteroffer, continued to litigate the matter and incur fees.  (Doc. No. 59 at 8.)  Second, FCA contends plaintiffs' use of "[two] firms and a total of 13 attorneys" resulted in a duplication of efforts, the costs of which should not be borne by it.  (*Id.* at 9.)  FCA therefore asks the court "to exclude the entire invoice from either KLG totaling $37,360.00,[] or from HDMN totaling $20,817.50."  (*Id.*)  Third, FCA asks the court to reduce the total number of hours attributed to HDMN lawyers due to the firm's practice of billing in quarter-hour increments.  (*Id.* at 9.)  The court addresses each of FCA's arguments in turn.

FCA's first argument—the hours billed are unreasonable because it offered to settle the matter for $95,000 in March of 2018, yet plaintiffs' counsel incurred an additional $46,052.50 only to settle the matter for a mere $15,000 more—is not availing.  FCA points the court to no authority, and the court is aware of none, that indicates that a plaintiffs' failure to accept an offer that is close to, but ultimately less than, the final settlement amount is a basis by which a court

/////

should reduce the number of hours for which plaintiffs' counsel is compensated in a subsequent statutory fee award.

Next, defendant argues that plaintiffs' employment of two law firms and thirteen lawyers to litigate this matter was unreasonable. (Doc. No. 59 at 9.) Here, too, FCA has failed to provide any authority in support of its position that solely based upon the employing of two law firms who assign multiple lawyers to a case, this court should reduce the number of attorney hours when considering an application for award for attorneys' fees. To the contrary, it has been "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir.1989)). Moreover, FCA has not identified in its opposition any entries in Knight Law and HDMN's billings that indicate a duplication of effort. For example, FCA contends that attorney Steve Mikhov of Knight Law billed twice for "reviewing Mandatory Settlement Conference results on 3/7/18 and then again on 3/12/18." (*Id.*) However, FCA provides no analysis for why this means that those efforts were duplicative. Not only do the billing entries reveal that attorney Mikhov only billed a mere "0.1" hours for each time he reviewed the settlement (*see* Doc. No. 57-2 at 20), and there is no reason to believe that reviewing the settlement on two different days means that the area of review was duplicative. The other instances that FCA argues are duplicative billing are similarly unavailing. The fact that HDMN attorneys, after being associated into the case, had to learn the facts of the case, review files, and get up to speed in preparation for the trial of this action does not constitute a duplication of effort. HDMN was brought in to try the case and therefore necessarily had to review files and pre-existing work-product to do so.

Finally, FCA contends that HDMN's total hours billed should be reduced across-the-board, because the firm billed its time in quarter-hour increments. (Doc. No. 59 at 11.) A court may impose an across-the-board reduction on hours that are billed by quarter-hour increments when such billing results in an attorney's fees award request reflecting an excessive number of hours. *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming district court's twenty percent, across-the-board reduction of hours where this billing practice

6

resulted in inflated time records).  In *Welch*, the Ninth Circuit affirmed an across-the-board reduction in hours after the district court had found that "the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.*  The Ninth Circuit's own review of the time records in *Welch* revealed that they were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." *Id.*  Here, the court also finds that HDMN's practice of billing by quarter-hour increments likely resulted in an inflated amount of attorney time being billed to this matter.  For example, HDMN's billing statement indicates various email and telephonic correspondences between HDMN lawyers and opposing counsel, inter-office meetings, and correspondences with the court, plaintiffs, and expert witnesses that were billed a minimum of fifteen or thirty minutes.  (Doc. No. 57-3 at 9–12.)  The court finds that these time entries are likely inflated "because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Welch*, 480 F.3d at 949.  The court will therefore exercise its discretion and apply a twenty-percent, across-the-board reduction to the number of hours awarded to HDMN attorneys in this case.  *See Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5 (E.D. Cal. May 21, 2018) (applying a twenty-percent, across-the-board reduction to HDMN's hours billed in quarter-hour increments for similar reasons).

The court has reviewed the Knight Law billing statements at issue here and concludes that the time billed was reasonably incurred in the commencement and prosecution of this action.  The court will include in the award the following hours to the Knight Law attorneys:

| Knight Law Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Amy Morse | 3.0 | 3.0 |
| Attorney Constance Morrison | 14.8 | 14.8 |
| Attorney Deepak Devabose | 5.1 | 5.1 |
| Attorney Kirk Donnelly | 16.0 | 16.0 |
| Attorney Jennifer Reiz | 4.5 | 4.5 |
| Attorney Jessica Underwood | 20.5 | 20.5 |
| Attorney Kristina Stephenson-Cheang | 12.6 | 12.6 |
| Attorney Russell Wirtz | 8.0 | 8.0 |
| Attorney Steve Mikhov | 9.9 | 9.9 |
| Total Hours | 94.4 | 94.4 |

The court has also reviewed the HDMN billing statements at issue here and concludes that, generally, the time billed was reasonably incurred in the commencement and prosecution of this action. However, as discussed above, the court will exercise its discretion and apply a twenty-percent across-the-board reduction to HDMN's billed hours due to the firm's practice of billing in quarter-hour increments even with respect to various emails and telephone conversations between HDMN lawyers and opposing counsel, inter-office meetings, and correspondences with the court, plaintiffs, and expert witnesses when those tasks almost certainly consumed only a fraction of the time billed. In addition, the court will not award attorney Sepehr Daghighian the full three hours he anticipatorily billed to prepare for and appear in-person at the hearing on the pending motion (Doc. No. 57-3 at 12) because he appeared telephonically at that hearing obviating the need for any travel time. Instead, the court will award attorney Daghighian one hour for the time he billed to prepare for and telephonically appear at the hearing, given that the hearing lasted roughly fifteen minutes and the issues discussed were straightforward and did not require significant preparation. Moreover, the court declines to award attorney Kevin Jacobson the full 6.5 hours that he anticipatorily billed to review and analyze FCA's opposition to this motion and to draft a reply thereto. (*Id.*) No evidence of the time actually spent on these tasks was presented to the court, but the court finds that an award of two hours for the performance of those tasks is reasonable given how brief the reply was and the fact that it is readily apparent from the face of the reply that attorney Jacobson relied upon pleadings from other actions as templates. Accordingly, the court finds the following hours appropriately attributable to the efforts of HDMN attorneys:

| HDMN Attorney/Paralegal | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Larry Castruita | 1.0 | 0.8 |
| Attorney Sepehr Daghighian | 10.25 | 6.6 |
| Attorney Eric Schmitt | 4.25 | 3.4 |
| Attorney Kevin Jacobson | 50.25 | 36.6 |
| Paralegal Andrea Plata | 5 | 4 |
| Total Hours | 70.75 | 51.4 |

2.     Hourly Rates to be Applied

Next, the court must determine whether the hourly rates requested by plaintiffs' attorneys are reasonable. Under California law, when awarding attorney's fees under § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (quoting *Nightingale,* 31 Cal.App.4th at 104). California courts therefore focus on the reasonable hourly rate for the work performed by the counsel who did that work, regardless of the forum in which that work was performed and without regard to typical hourly rates in the forum in which the matter was litigated.[2] *See Goglin*,

---

[2] In awarding attorneys' fees under the Song-Beverly Act, other district courts have required "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4 (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D. Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6 (E.D. Cal. May 21, 2018). Citing to Ninth Circuit and Supreme Court precedent, these courts state that the "relevant community" in determining a prevailing market rate is the forum in which the district court sits and then analyze whether the rates requested by counsel are reasonable in light of rates paid to attorneys of similar skill and experience in the forum district. *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6. This, however, is the framework that federal courts apply to motions seeking attorneys' fees pursuant to a federal statute. The court is aware of no authority holding that a federal court must apply that same framework when awarding attorneys' fees pursuant to a state statute. Indeed, the California Court of Appeal in *Goglin* did not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders that the parties have pointed this court to, state courts generally do not engage in that analysis. The undersigned, therefore, considers the pending motion under the standard articulated by the California Court of Appeal in *Goglin* and will determine "whether the monetary charge being made for the time expended [is] reasonable" in light of "the complexity of the case and procedural demands, the skill exhibited and the results achieved." 4 Cal. App. 5th at 470 (internal quotation marks and citation omitted). This approach will appropriately result in plaintiffs' counsel being compensated at the same hourly rates they would have received in state court rather than some lower rate based solely on the removal of the action to federal court. Even if the rate determination framework utilized in motions seeking attorneys' fees pursuant to federal statutes were to apply in this case, the court notes that the hourly rates found to be reasonable by this order would be the same under that framework. For, under the "relevant community" analysis, this court would look to the orders of state courts within the Eastern District of California and conclude that those rates are consistent with those prevailing in the community for similar services. *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *2 n.1 (E.D. Cal. Aug. 15, 2019).

4 Cal. App. 5th at 470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Beverly Act case on the grounds that the trial court had considered the evidence that the client agreed to compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal courts had awarded the attorney comparable rates in similar cases, and the trial court had observed the attorney's skills first hand, while not even mentioning the prevailing rates in the trial court's area); *see also Filiberto Negrete v. Ford Motor Co. et al.*, No. ED CV 18-1972-DOC (KKx), 2019 WL 4221397, at *3 (C.D. Cal. June 5, 2019) ("Plaintiff has demonstrated that counsel has been awarded attorneys' fees at similar rates under the Song-Beverly Act. [citation omitted.] Such evidence is generally sufficient to show that an attorney's hourly rates are reasonable."). The fee applicant bears the burden of producing satisfactory evidence that the fees incurred were "reasonable in amount." *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Knight Law attorneys request the following hourly rates for its attorneys who worked on this matter:

| Knight Law Attorney | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Constance Morrison | $375.00 | 20 years |
| Attorney Deepak Devabose | $275.00 | 5 years |
| Attorney Kirk Donnelly | $400.00 | 20 years |
| Attorney Jennifer Reiz | $225.00 | 4 years |
| Attorney Jessica Underwood | $350.00 | 4 years |
| Attorney Kristina Stephenson-Cheang | $375.00 | 11 year |
| Attorney Richard Wirtz | $575.00 | 25 years |
| Attorney Steve Mikhov | $550.00 | 16 years |

(Doc. No. 857-2 at 6–8.) The HDMN attorneys request the following hourly rates for its attorneys who worked on this matter:

| HDMN Attorney or Paralegal | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Larry Castruita | $350.00, $385.00 | 8 years |
| Attorney Sepehr Daghighian | $490.00, $550.00 | 14 years |
| Attorney Erik Schmitt | $250.00, $275.00 | 2 years |
| Attorney Kevin Jacobson | $250.00, $275.00 | 1 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

10

(Doc. No. 57-3 at 2–4.)

In support of the rates requested by their attorneys, plaintiffs have submitted the declarations of attorneys Daghighian and Mikhov and rate determinations by courts in other cases for some of the attorneys at issue. (Doc. Nos. 57-2, 57-3, 64-1.) These declarations both state the rates that the attorneys and other lawyers from their respective firms charged in this matter and aver that the requested rates are reasonable. (*See* Doc. No. 57-2 at 6–9; 57-3 at 2–7.) Attached to attorney Mikhov's declaration and supplemental declaration are several hourly rate determinations by state courts in Song-Beverly Act actions with respect to some of the attorneys who worked on this case. (*See* Doc. Nos. 57-2 at 84–146; 64-1, Exs. C–Q.) FCA has also attached to its opposition and supplemental briefing hourly rate determinations by state courts in Song-Beverly Act actions where some of the attorneys at issue have been awarded rates lower than those requested by them here. (*See* Doc. Nos 59-3 at 2–18; 65-1, Exs. A–E.) These attachments demonstrate that various superior courts in California have awarded the following rates in Song-Beverly Act actions to the following attorneys at issue here: attorney Mikhov has been awarded hourly rates between $300.00 and $500.00; attorney Morse has been awarded hourly rates between $250.00 and $350.00; attorney Devabose has been awarded hourly rates between $200.00 and $250.00; attorney Underwood has been awarded hourly attorney rates of $250.00; attorney Stephenson-Cheang has been awarded hourly rates between $300.00 and $350.00; attorney Wirtz has been awarded hourly rates between $300.00 and $500.00; attorney Castruita has been awarded an hourly rate of $300.00; attorney Daghigian has been awarded an hourly rate of $350.00; attorney Schmitt has been awarded an hourly rate of $225.00; and attorney Jacobson has been awarded an hourly rate of $200.00. Moreover, after reviewing rates awarded by various superior courts in California, the undersigned recently issued an order awarding the following hourly rates to the following attorneys at issue in this action as well: $350.00 for attorney Morse; $250.00 for attorney Devabose; $350.00 for attorney Stephenson-Cheang; $500.00 for attorney Mikhov; $300.00 for attorney Castruita; $500.00 for attorney Daghighian; $250.00 for attorney Schmitt; and $75.00 for paralegal Plata. *Sekula v. FCA US LLC*, No. 1:17-cv-00460-DAD-JLT, 2019 WL 5290903, at *7 (E.D. Cal. Oct. 18, 2019).

11

Because "the reasonable value of attorney services is variously defined as the hourly amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal. 4th at 1133, the court finds that evidence of what some of the attorneys have previously been awarded when litigating other Song-Beverly actions does assist this court in determining what the reasonable hourly rates should be in this case. *See also Goglin*, 4 Cal. App. 5th at 470; *Filiberto Negrete*, 2019 WL 4221397, at *3. Having considered the various state court orders submitted by both plaintiffs and FCA as well as other evidence, the court concludes that the following hourly rates as to each of plaintiffs' attorneys are reasonable:

| Knight Law Attorney | Hourly Rate to be Awarded | Years of Experience |
|---|---|---|
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Constance Morrison | $350.00 | 20 years |
| Attorney Deepak Devabose | $250.00 | 5 years |
| Attorney Kirk Donnelly | $350.00 | 20 years |
| Attorney Jennifer Reiz | $250.00 | 4 years |
| Attorney Jessica Underwood | $250.00 | 4 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 11 year |
| Attorney Richard Wirtz | $500.00 | 25 years |
| Attorney Steve Mikhov | $500.00 | 16 years |
| **HDMN Attorney or Paralegal** | **Hourly Rate to be Awarded** | **Years of Experience** |
| Attorney Larry Castruita | $300.00 | 8 years |
| Attorney Sepehr Daghighian | $500.00 | 14 years |
| Attorney Erik Schmitt | $250.00 | 2 years |
| Attorney Kevin Jacobson | $200.00 | 1 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

3.  Lodestar Calculation

Based on the hours and hourly rates that the court has awarded plaintiffs' attorneys, the lodestar here totals $44,725.00. The court's calculations are reflected below:

| Law Firm | Legal Professional | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|
| Knight Law | Attorney Amy Morse | 3.0 | $350.00 | $1,050.00 |
| | Attorney Constance Morrison | 14.8 | $350.00 | $5,180.00 |
| | Attorney Deepak Devabose | 5.1 | $250.00 | $1,275.00 |
| | Attorney Kirk Donnelly | 16.0 | $350.00 | $5,600.00 |
| | Attorney Jennifer Reiz | 4.5 | $250.00 | $1,125.00 |
| | Attorney Jessica Underwood | 20.5 | $250.00 | $5,125.00 |

12

|  | | | | |
|---|---|---|---|---|
|  | Attorney Kristina Stephenson-Cheang | 12.6 | $350.00 | $4,410.00 |
|  | Attorney Richard Wirtz | 8.0 | $500.00 | $4,000.00 |
|  | Attorney Steve Mikhov | 9.9 | $500.00 | $4,950.00 |
| **HDMN** | Attorney Larry Castruita | 0.8 | $300.00 | $240.00 |
|  | Attorney Sepehr Daghighian | 6.6 | $500.00 | $3,300.00 |
|  | Attorney Erik Schmitt | 3.4 | $250.00 | $850.00 |
|  | Attorney Kevin Jacobson | 36.6 | $200.00 | $7,320.00 |
|  | Paralegal Andrea Plata | 4 | $75.00 | $300.00 |
|  |  |  | **Total:** | $44,725.00 |

4. Lodestar Multiplier

Next, plaintiffs urge this court to apply a multiplier of 0.5 to the lodestar in this case. (Doc. No. 57-1 at 19–21.) Plaintiffs argue that the contingent nature of this litigation warrants a 0.2 multiplier and that the delay in payment warrants a 0.3 multiplier. (*Id.* at 20–21.) According to plaintiffs, "there always existed the possibility that Plaintiffs would not prevail" and that "Plaintiffs' attorneys advanced all litigation costs and expenses without reimbursement." (*Id.* at 20.) FCA argues that an upward multiplier is not warranted here. (Doc. No. 59 at 14–20.) For the reasons that follow, the court chooses to not apply an upward multiplier.

The lodestar may be "augmented . . . by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award." *Robertson*, 144 Cal. App. 4th at 819; *see also Warren v. Kia Motors America, Inc.*, 30 Cal. App. 5th 24, 35 (2018).

Here, plaintiffs do not contend that their attorneys were precluded from seeking other employment, and the court finds that the questions involved in this action were not novel or difficult, nor did the attorneys demonstrate exceptional skill in presenting the issues. Rather, plaintiffs argue that "[t]his case required a range of specialized knowledge including: (1) an understanding of the full scope of consumer protection laws, . . .; (2) knowledge of the intricacies of automobiles . . .; and (3) knowledge of auto manufactures' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations." (Doc. No. 57-1 at 15.)

13

However, the fact that plaintiffs' attorneys had to become familiar with a case is not the type of novelty or difficulty that ordinarily justifies an upward multiplier. Moreover, as plaintiffs admit, "[p]laintiffs' attorneys have acquired knowledge and insight about these [issues] over the course of many years of litigation," and the attorneys do not "spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited." (*Id.* at 15–17.) Indeed, the issues presented by this case have recently been addressed in several cases before this court, many of which involved the same attorneys who appeared in this action. *See, e.g.*, *Sekula*, 2019 WL 5290903; *Self*, 2019 WL 1994459; *Hall*, 2018 WL 2298431; *Garcia v. FCA US LLC*, 1:16-cv-00730-JLT (E.D. Cal. March 7, 2018). Finally, with respect to counsel's performance, the court has reviewed the pleadings filed in this action and finds that the skills displayed by counsel were, on balance, average at best, given that it is readily apparent from the face of the pleadings filed by plaintiffs that counsel relied upon pleadings from other actions as templates and that some of their filings here contained references to vehicles, individuals, and issues that had no relation to this action. The court therefore finds that the first two factors that could justify the application of a multiplier are not present here because this was a Song-Beverly action of ordinary complexity and difficulty.[3]

Moreover, the court concludes that the contingent nature of this action does not weigh in favor of an upward multiplier. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1132.

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

---

[3] The undersigned also notes that its comments in this regard are limited to the written work produced by plaintiffs' attorneys in this case. Attorney Daghighian, for instance, has tried a Song-Beverly Act case before the undersigned and demonstrated notable trial skills in that matter.

*Id.* (citation and internal quotation marks omitted). The court concludes that an upward multiplier based on the contingent risk is not warranted here because that factor is outweighed by the other factors the court has considered, namely that this case was not novel, complex, or difficult, especially because the disputed facts and issues to be resolved were minimal.

Similarly, the court finds that an upward multiplier due to any delay in payment of fees to plaintiffs' counsel is unwarranted here. Plaintiffs contend that "FCA dragged this case until they agreed to settle." (Doc. No. 57-1 at 21.) Be that as it may, the court is not convinced that (1) FCA is solely to blame for the delay in resolving this action and (2), even if it was, it does not appear to the court that any delay was so egregious so as to justify an upward multiplier.

Accordingly, the court declines to apply an upward multiplier to the lodestar amount under the circumstances of this case.

**B.     Costs and Expenses Request**

Finally, plaintiffs seek an award for costs and expenses incurred by their counsel in litigating this matter. Initially, plaintiffs sought $12,135.93 in costs and expenses. (Doc. No. 57-1 at 13.) This initial sum, however, included costs that were properly pursued through a bill of costs, which is processed by the court clerk, as opposed to a motion for attorneys' fees and costs. *See* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d); Local Rule 242. Accordingly, at the May 7, 2019 hearing on the pending motion, the court instructed plaintiffs to refile their request and eliminate from their motion costs reimbursable through a separately filed bill of costs. On May 17, 2019, plaintiffs filed a bill of costs that was approved in part on June 26, 2019. (*See* Doc. Nos. 63, 68.) Now pending before the court is plaintiffs' motion for reimbursement of costs and expenses in the amount of $10,939.93. (Doc. No. 64 at 2.) FCA contends that the costs sought should be reduced, arguing that: "travel related [costs] . . . are unreasonable, particularly because Plaintiffs have failed to offer any explanation for why it took lawyers from Lost Angeles to represent them" in this action. (Doc. No. 65 at 7–8.)

The court does not find FCA's general challenge to the travel costs and expenses claimed here to be persuasive. Plaintiffs' travel costs incurred were reasonably incurred in prosecuting this action. The court has reviewed the records for the remaining costs and expenses sought by

15

plaintiffs and finds them to be reasonably incurred. Accordingly, the court concludes that plaintiffs are also entitled to a total of $10,939.93 in reimbursements for costs in addition to an award of reasonably incurred attorneys' fees.

**CONCLUSION**

For the reasons set forth above:

1. Plaintiffs' motion for attorneys' fees and costs (Doc. No. 57) is granted in part;
2. The court awards $44,725.00 in attorneys' fees based on the lodestar analysis set forth above;
3. The court awards costs, in addition to the amount of the separate bill of costs, in the amount of $10,939.93; and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 29, 2020**

_____
UNITED STATES DISTRICT JUDGE